WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

RONALD DICK, )
)
)
                Plaintiff, )
)
vs. )   No. 3:23-cv-00041-HRH
)
CITY & BOROUGH OF SITKA & THE )
SITKA POLICE DEPARTMENT, )
)
)
                Defendants. )
_____)

O R D E R

Motion for Summary Judgment[1]

Defendants City and Borough of Sitka and the Sitka Police Department ("Sitka") move for summary judgment in their favor on the remaining claim alleging discrimination under the Americans with Disabilities Act ("ADA").[2] The motion is opposed by Plaintiff Ronald Dick.[3] Defendants replied.[4] Oral argument would not be of assistance to the court.

---

[1] Docket No. 49.

[2] Docket No. 1 at 6.

[3] Docket No. 54.

[4] Docket No. 61.

ORDER – Renewed Motion for Summary Judgment    - 1 -

Background Facts and Procedural History

This case stems from Plaintiff's use of a modified, electric-powered golf cart on the roadways in Sitka, Alaska. The specific facts regarding his use of the golf cart were established in an earlier round of summary judgment motions, which were filed before discovery deadlines had passed. The circumstances related to Plaintiff's use of the golf cart are not in dispute and are repeated herein for necessary context.[5]

Plaintiff began using his golf cart in 2019. Plaintiff asserts it is necessary to accommodate physical disabilities stemming from his years of military service. These disabilities include spinal stenosis, osteoarthritis, and problems with his rotator cuff. They cause severe mobility impairments that affect his ability to walk even short distances, his balance and coordination, his fine motor skills, and his range of motion with his upper extremities. These impairments prevent him from driving, entering, or sitting in a car; sitting straddle on a bicycle, motorcycle, or ATV; and steering anything that requires him to have his arms above his shoulders.

Plaintiff mitigates the effects of these mobility impairments by driving the golf cart around Sitka. He can independently get into and out of the golf cart. He can manipulate its controls without difficulty. He can travel further distances using the golf cart than he can by walking and generally uses it to travel up to a few miles. His ability to use the golf cart has allowed him to attend his various medical appointments. The benefits to Plaintiff are such that his doctor has prescribed its use as a mobility device.

When Plaintiff began driving the golf cart in Sitka he encountered some initial inquiries and concerns from local law enforcement. Ultimately, after consultation with the

---

[5]The facts are also set forth in the court's prior order at Docket No. 27.

Alaska Department of Public Safety, Sitka concluded that any electric vehicle, such as the golf cart, equipped with lights and a horn could operate on roadways designated for speeds not to exceed 35 miles per hour. In compliance with these standards, Plaintiff drove the golf cart without interference for over three years.

Sitka's accommodation of Plaintiff's golf cart suddenly ended on May 27, 2022. On that day, he was stopped by a law enforcement officer who informed him that he was no longer allowed to drive the golf cart. Sitka based its decision on an ordinance, newly enacted at that time, that regulates "All-purpose Vehicles" ("APVs").[6] The ordinance requires that all APVs in Sitka be insured and registered with the state, meet certain safety requirements, and go through a permitting process.

Plaintiff's subsequent efforts to reverse Sitka's decision failed. Plaintiff asserted that the ADA required Sitka to treat his golf cart as a non-wheelchair mobility devise—referred to under the ADA regulations as "other power-driven mobility devices" or "OPDMDs"—and accommodate its use in all areas where the public is allowed to go. Sitka disagreed and no other discussions were had. Instead, this lawsuit followed, with Plaintiff bringing a claim against defendants under Title II of the ADA for discrimination based on disability.[7]

Shortly after this lawsuit began, the parties submitted competing motions for

---

[6]The APV ordinance in place at the time this action commenced and at the time of this briefing was found at § 11.75 of the Sika General Code. A copy of that version of the APV ordinance is at Docket 54-8 (Ex. 6). The APV ordinance has since been relocated within the Sitka General Code and is now at § 11.85. See https://sitka.municipal.codes/SGC (last visited July 15, 2025).

[7]Plaintiff also asserted state law tort claims in his complaint, but those claims were dismissed in the court's prior order on the parties' motions for summary judgment. Docket No. 27 at 19-20.

summary judgment. The court denied both motions, asserting there were issues of fact left undeveloped as to the reasonableness and safety of Plaintiff's request.[8] More specifically, it denied Plaintiff's argument that his use of the golf cart is presumptively reasonable under 28 C.F.R. § 35.137(b), the ADA regulation addressing OPDMDs. The court concluded that § 35.137(b) does not apply to a disabled individual's request to use an OPDMD as a vehicle upon the roadway. It also explained that, even if the regulation were to apply, Plaintiff had not produced enough evidence to support all the elements of his ADA failure to accommodate claim; namely whether he otherwise met all the essential eligibility requirements needed to use the golf cart as a motor vehicle and whether Sitka's alternatively proposed options, particularly the APV permitting process, failed to provide him with adequate access to Sitka's roadways.

The court also denied Sitka's request for summary judgment. It rejected its argument that Plaintiff's use of the golf cart is unreasonable as a matter of law simply because it runs afoul of its ordinances and state vehicle regulations, explaining that the ADA requires modification of those laws as needed to "insure that the mandate of [the ADA] is achieved."[9] It also found that there were undeveloped issues of fact as to whether accommodating Plaintiff's use of the golf cart on the roadways would fundamentally alter the nature of the regulatory program applicable to vehicles.[10]

The parties thereafter continued with discovery efforts. Plaintiff's golf cart was inspected in early 2024 to determine whether Plaintiff could obtain an APV permit for the

---

[8]Docket No. 27.

[9]Docket No. 27 at 18 (quoting Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996)).

[10]Docket No. 27 at 18-19.

cart. Sitka determined that the golf cart lacked equipment and features that are "fundamentally necessary for the safe operation of vehicles on public roadways."[11] It concluded that the cart was "severely underpowered" and "cannot meet minimum traffic speeds" and because these deficiencies are intrinsic to the cart itself and cannot be fixed, it declined to issue an APV permit for the golf cart's use.[12]

Plaintiff maintains insurance coverage on his golf cart but has been unable to obtain state registration for it.[13] An official with the state's division of motor vehicles determined that his golf cart is a "personal electric vehicle" and therefore exempt from registration requirements.[14] However, that determination was later revised, with that official stating that the golf cart does not actually satisfy the definition of a personal electric vehicle. He noted instead that vehicles like the golf cart would "as a general rule . . . be registered as an Off Highway Vehicle [or] . . . an All Purpose Vehicle."[15]

The parties met to discuss potential accommodations given these known limitations. Plaintiff clarified in writing that his requested ADA accommodation is to be allowed to drive his golf cart, with certain lighting modifications, on roads that have a posted speed limits of 35 miles per hour or less, except that he "may cross Halibut Point Road to get from one permitted road to another" and that he may "use the bike lane on the McConnell

---

[11]Docket No. 54-9 at 2 (Ex. 7 at 2).

[12]Docket No. 54-9 at 1-2 (Ex. 7 at 1-2).

[13]Docket No. 54-1 at 2 (Decl. of Ronald Dick at ¶¶ 4-6); Docket No. 54-2 (Ex. 2).

[14]Docket No. 54-1 at 2 (Decl. of Ronald Dick at ¶ 6); Docket No. 54-4 (Ex. 3).

[15]Docket No. 61-1 at 1 (Ex. A).

Bridge for the purpose of accessing medical appointments."[16]

Sitka rejected this and any other accommodation for Plaintiff's golf cart. It noted that it was not willing to allow Plaintiff to use his golf cart on any road within the city.[17] It then filed this renewed request for summary judgment.

## Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." Arandell Corp. v. Centerpoint Energy Servs., Inc., 900 F.3d 623, 628-29 (9th Cir. 2018) (quoting T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)).

---

[16] Docket No. 49-2 at 1 (Ex. B).

[17] Docket No. 54-7 at 13 (Ex. 5, Rule 30(b)(6) Dep. of Robert Baty at 22).

ORDER – Renewed Motion for Summary Judgment     - 6 -

Discussion

Plaintiff raises a claim under Title II of the ADA, which prohibits disability discrimination with regard to services, programs, and activities offered by public entities. Title II states as follows:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Based on this provision, a public entity must operate its services, programs, and activities in a manner that provides meaningful access to individuals with disabilities. Hunsaker v. Contra Costa Cnty., 149 F.3d 1041, 1043 (9th Cir. 1998). This accessibility standard requires a public entity to make reasonable modifications to policies and practices when necessary to accommodate individuals with disabilities unless those modifications would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. § 35.130(b)(7).

The Ninth Circuit has explained the plaintiff's burden of proof under Title II. Weinreich v. L.A. Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997). First, the plaintiff must show he is a "qualified individual with a disability." Id. This means that the plaintiff must be able to meet, with or without reasonable accommodation, the "essential eligibility" requirements for the benefit offered. 42 U.S.C. § 12131(2). Second, the plaintiff must show that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities.[18] Weinreich, 114 F.3d at 978. Third, he must demonstrate that the exclusion or denial was because of his disability. Id. Exclusion

---

[18] The parties agree that the city's roadways constitute a public service within the meaning of Title II. See Docket No. 27 at 9.

ORDER – Renewed Motion for Summary Judgment   - 7 -

or denial on the basis of disability includes situations where a public service, program, or activity is not accessible to an individual because of his disability and the public entity fails to make reasonable accommodations that could facilitate that access.

In a failure to accommodate claim, such as the one presented here, the plaintiff must show the existence of a reasonable accommodation not provided by the public entity that would make the service at issue readily accessible to him and must show that any other accommodation offered by the public entity did not reasonably facilitate access. See Memmer v. Marin Cnty. Courts, 169 F.3d 630, 633-34 (9th Cir. 1999); Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1137 (9th Cir. 2001). That is, the plaintiff's requested accommodation must not only be reasonable but also necessary to provide access. See 28 C.F.R. § 35.130(b)(7)(i) (noting that a public entity must make reasonable accommodations when "necessary" to avoid discrimination based on disability); cf. PGA Tour, Inc. v. Martin, 532 U.S. 661, 683 n. 38 (2001) (explaining, in the analogous context of Title III, that the inquiry requires consideration of whether the requested accommodation is not only reasonable but also necessary). This inquiry "is highly fact-specific, requiring case-by-case inquiry" about a particular individual's need. Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996).

If the plaintiff can show as much, the burden switches to the public entity to demonstrate that the requested accommodation, even if reasonable and necessary, would fundamentally alter the nature of the program. 28 C.F.R. § 35.130(b)(7)(i); cf. Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1047 (9th Cir. 1999). Additionally, if safety concerns are at issue, the public entity can establish as a defense that the disabled individual's participation poses a direct threat to the health or safety of others. 28 C.F.R. § 35.139(a). To do so, the entity must show that facilitating access to the disabled

individual poses a legitimate safety risk to the public that is not eliminated by the requested or available accommodations. 28 C.F.R. § 35.139(b); 28 C.F.R. § 35.104. "[T]he entity asserting a 'direct threat' as a basis for excluding an individual bears a heavy burden of demonstrating that the individual poses a significant risk to the health and safety of others." Lockett v. Catalina Channel Exp., Inc., 496 F.3d 1061, 1066 (9th Cir. 2007).

Sitka's request for summary judgment is primarily based on the safety of Plaintiff's golf cart being used as a vehicle on the roadways. This focus on safety is relevant not only to the reasonableness of Plaintiff's requested accommodation, but also to whether Plaintiff is "qualified" to use the roadways—that is, whether Plaintiff meets the essential requirement of being able to safely operate a vehicle on those roadways. The safety of the golf cart is also relevant to the affirmative defense that Plaintiff's use of the golf cart as a mode of transportation poses a direct threat to the public.[19]

In seeking summary judgment based on these safety issues, Sitka relies on Plaintiff's inability to obtain registration for his golf cart, which is required under state law for "[e]very vehicle driven, moved, or parked upon a highway." AS 28.10.011. It argues that without registration, there is no way for it to ensure the golf cart's road-worthiness and safety. That the golf cart is unregistered in contravention of state and local regulations does not, as a matter of law, warrant summary judgment in favor of Sitka. This is one of the arguments made and rejected in the first round of summary judgment motions.[20] Again, the fact that Plaintiff's use of his golf cart may contradict state regulations is not solely determinative: "[I]t is well established that the ADA's reasonable modification

---

[19]Where questions of safety are involved, what constitutes essential eligibility requirements mirrors the direct threat analysis. See 28 C.F.R. Part 35 Appx. B.

[20]Docket No. 27 at 18.

ORDER – Renewed Motion for Summary Judgment     - 9 -

requirement may preempt state law. . . . Accordingly, the possibility that a modification might preempt state law does not automatically render it unreasonable." Smith v. City of Oakland, 612 F. Supp. 3d 951, 967 (N.D. Cal. 2020) (citing Crowder, 81 F.3d at 1485). Moreover, Sitka's assertion that it does not have the ability to determine the safety of a vehicle apart from the registration process is belied by Plaintiff's expert, a traffic engineer, who considered whether any features the golf cart lacks affects its road-worthiness and safety.[21] As such, the lack of registration, while relevant evidence related to the issue of safety, is not determinative and thus does not warrant summary judgment in Sitka's favor.

Sitka argues that allowing golf carts to drive on roadways would be unprecedented, and therefore necessarily unreasonable. Sitka's police chief, Robert Baty, contends that "there's not one single law in the United States that allows people to drive golf carts on roadways, unless they're a gated community, which is all private property."[22] Such a pronouncement is unsupported. Indeed, as discussed thoroughly in Plaintiff's briefing, other states do in fact permit golf carts to operate on roadways subject to various limitations.[23]

Sitka also argues that, apart from lack of registration, Plaintiff's golf cart in particular is indisputably unsafe. It relies in part on the fact that the cart does not satisfy federal low-speed vehicle ("LSV") regulations. LSV regulations mandate certain features

---

[21]Docket No. 54-6 (Ex. 4, Expert Op. of Mike Blankenship).

[22]Docket No. 54-7 at 23-24 (Ex. 5, Rule 30(b)(6) Dep. of Robert Baty at 99-100).

[23]See Docket No. 54 at 9-10; Docket No. 54-6 at 2-3 (Ex. 4, Expert Op. of Mike Blankenship at 3, ¶ 3(4)); Low Speed Vehicles, 63 Fed. Reg. at 33195 (noting that "a growing number of states from California to Florida have passed legislation eliminating or establishing exceptions to the requirement that the on-road use of golf cars be in the vicinity of a golf course and [instead] authorizing their local jurisdictions to permit general on-road use of 'golf carts,' subject to speed and/or operational limitations).

that are needed to safely operate vehicles that travel between 20-25 miles per hour. 63 Fed. Reg. at 33196; 49 C.F.R. § 571.500(a). These regulations, however, only cover vehicles capable of exceeding 20 miles per hour. 63 Fed. Reg. at 33196-98. Plaintiff's golf cart operates just below 20 miles per hour and therefore is not subject to those federal safety regulations.[24] Accordingly, that Plaintiff's golf cart does not meet LSV regulations is not determinative of the issue of safety.[25] It is simply means that, because his cart travels at speeds lower than 20 miles per hour, those particular safety requirements are not applicable. Golf carts that "are incapable of exceeding 20 mph . . . are subject to only state and local requirements regarding safety equipment." 63 Fed. Reg. at 33194.

As for the applicable state and local requirements, there remain disputed facts as to what is needed for Plaintiff's golf cart to satisfy state registration requirements or otherwise operate as a street-legal vehicle. Indeed, LSV requirements are only one of many type of unconventional vehicles provided for in the regulations. Alaska in fact allows golf carts to operate on certain roadways as long as they "comply with the requirements applicable to snowmobiles and other off-highway vehicles, and with relevant and consistent equipment requirements established for motorcycles . . . ." 13 AAC 04.420(b). Also, there is evidence to support the possibility that Plaintiff's golf cart could be registered as an off-highway vehicle or as an all-purpose vehicle under the state

---

[24] Docket No. 49-1 at 8 (Ex. A, Interview of Ronald Dick at 17); Docket No. 49-3 at 3 (Ex. C at 3).

[25] "The crash forces that 20 to 25 mile-per-hour vehicles will experience are significantly greater than those for 50 to 20 mile-per-hour golf cars . . . . Those greater forces make it necessary to require that LSVs be equipped with more safety features." 63 Fed. Reg. at 33198.

ORDER – Renewed Motion for Summary Judgment     - 11 -

regulations.[26] There is nothing in the record to clearly establish how Plaintiff's golf cart falls short of these various standards and therefore nothing to demonstrate what particular safety issues prevent it from being registered with the state.

The only safety issues evidenced in the record are related to the city's APV permitting process. The record shows that Plaintiff's golf cart did not qualify for the city's APV permit, which would have allowed Plaintiff to use the golf cart on the roads pursuant to local standards. Some of the deficiencies noted in the city's letter denying the permit include lack of brake lights and turn signals and other more mutable features such as mudflaps.[27] The most notable deficiency relied on by the city to deny the permit was that the golf cart is "severely underpowered" and "cannot meet minimum traffic speeds."[28] The city's denial letter explained that the safety issues with a vehicle unable to meet minimum traffic speeds "should be obvious."[29] However, the only evidence provided in support of this position for purposes summary judgment consists of the statement of its police chief, based on his knowledge and experience with traffic in the city, that a golf cart on the roadways creates a traffic risk.[30]

Plaintiff, in turn, has put forth contradictory evidence to create a disputed issue of fact as to the safety of his particular golf cart traveling on roads less than 35 miles per hour as proposed. He points to the fact that Sitka allows motorized wheelchairs, bicycles, scooters, and Segways, as well as animal-drawn carriages, to be operated on Sitka's

---

[26] Docket No. 61-1 (Ex. A).

[27] Docket No. 54-9 at 2 (Ex. 7).

[28] Id.

[29] Id.

[30] Docket No. 51 at 2-3 (Ex. D, Aff. of Robert Baty at ¶¶ 6-8).

roadways and that Sitka has no data to support its conclusion that a golf cart poses a greater risk than these other types of slow-moving devices.[31] He further argues that Sitka does not post minimum speed requirements and that it does not issue citations for slow-moving vehicles.[32] The record also shows that Plaintiff drove his golf cart for three years with permission and without incident, belying the notion that the golf cart is an obvious safety concern.[33] Most importantly, Plaintiff has provided an expert opinion from a traffic engineer that Plaintiff's use of his golf cart on Sitka's roads as proposed does not create any safety issues to the public.[34] This opinion alone creates a genuine issue of material fact as to the issue of safety that only the jury can resolve. See, e.g., Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion.").

The record simply does not definitively demonstrate, for the purposes of granting Sitka summary judgment, that the golf cart is not safe to operate on the roadways as proposed.

Apart from the disputed issues of safety, Sitka argues summary judgment in its favor is nonetheless warranted because Plaintiff's requested accommodation to use the golf cart is not necessary for access. Again, Title II only requires that a public entity provide the reasonable accommodation if it is <u>necessary</u> to provide the disabled individual

---

[31] Docket No. 54-7 at 26-48 (Ex. 5, Rule 30(b)(6) Dep. of Robert Baty at 104-27).

[32] Docket No. 54-7 at 49 (Ex. 5, Rule 30(b)(6) Dep. of Robert Baty at 141).

[33] Docket No. 11 at 5 (Decl. of Ronald Dick at ¶ 43); Docket No. 11-2; Docket No. 11-4.

[34] Docket No. 54-6 (Ex. 4, Expert Op. of Mike Blankenship).

ORDER – Renewed Motion for Summary Judgment  - 13 -

with meaningful access. Plaintiff argues that his golf cart is his only viable option for independent transportation given his severe mobility impairments.[35] Sitka, however, contends that Plaintiff can use available public transportation or purchase a "street-legal" golf cart.

Whether an accommodation is necessary requires consideration of whether there is any other potential option that would provide the disabled individual with a "like experience" to non-disabled individuals. Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012). Plaintiff relies on the fact that the golf cart gives him independence and flexibility that public ride options do not, contending he is unable to use public transportation or the available "door-to-door van service" in a manner that provides the same experience as others in the community. He asserts that he cannot walk to the bus stop or to the end of his driveway, making all ride-share options insufficient.[36] He also asserts that he cannot afford to replace his golf cart for a faster one that qualifies as a low-speed vehicle that can be registered under the applicable state regulations.[37] Indeed, the existence of any other type of transportation option does not make a requested accommodation unnecessary as a matter of law. There must be consideration of the particular individual's need, which is inherently a fact-intensive inquiry. See Duvall, 260 F.3d 1137 (considering whether the defendant's proposed accommodation provided equal access given plaintiff's particular disability and needs); see also Baughman, 685 F.3d at

---

[35]Docket No. 54-1 at 2-3 (Decl. of Ronald Dick at ¶¶ 7-8, 10); Docket No. 11 at 3, 5 (Decl. of Ronald Dick at ¶¶ 31-33, 43).

[36]Docket 54-1 at 2-3 (Decl. of Ronald Dick at ¶¶ 7-8, 10); Docket No. 49-1 at 5-6 (Ex. A, Interview of Ronald Dick at 13-15); Docket No. 54-10 at 2-4 (Ex. 8, Interview of Ronald Dick at 29-31).

[37]Docket No. 54-10 at 5-8 (Ex. 8, Interview of Ronald Dick at 35-36, 39-40).

1135-36 (taking into account the plaintiff's preference based on comfort levels and pain). Viewing the evidence in a light most favorable to Plaintiff, disputed issues of fact prevent summary judgment based upon the issue of necessity.

Sitka alternatively requests "partial summary judgment on any claim of intentional discrimination leading to money damages."[38] It argues that there is no evidence of an intent to discriminate and therefore Plaintiff is not entitled to monetary damages under Title II of the ADA. While the plaintiff must prove intentional discrimination in order to recover money damages, that burden can be met with evidence of deliberate indifference on the part of the defendant. Duvall, 260 F.3d at 1138-39. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. It can be demonstrated with evidence that the plaintiff alerted the public entity about a need for an accommodation and that the public entity then failed to undertake a "fact-specific investigation to determine what constitutes a reasonable accommodation." Id.

Plaintiff has provided sufficient evidence to create a triable issue of fact on the issue of deliberate indifference. Plaintiff informed Sitka officials about why he used his golf cart and why he believed it was a necessary ADA accommodation.[39] Plaintiff's evidence suggests that Sitka denied the accommodation based solely on the city's traffic code. Sitka's position was simply that the ADA did not apply to the situation and that the municipal code took precedence.[40] Mere speculation that an accommodation is not

---

[38]Docket No. 49 at 14.

[39]Docket No. 11 at 4-5 (Decl. of Ronald Dick at ¶¶ 40-43); Docket No. 11-6.

[40]Docket No. 11 at 7 (Decl. of Ronald Dick at ¶¶ 59-60); Docket No. 11-6;
(continued...)

ORDER – Renewed Motion for Summary Judgment     - 15 -

Case 3:23-cv-00041-HRH   Document 73   Filed 07/17/25   Page 15 of 16

reasonable or feasible falls short of the ADA's requirement that the public entity "gather sufficient information from the disabled individual and qualified experts as needed to determine what accommodations are necessary." Id. at 1136 (quoting Wong v. Regents of the Univ. of Cal., 192 F.3d 807, 818 (9th Cir. 1999)). Consequently, Plaintiff's evidence, viewed in his favor, creates an issue of fact as to whether Sitka adequately considered Plaintiff's ADA request and therefore prevents summary judgment in favor of Sitka on the issue of money damages.

## Conclusion

Based on the preceding discussion, Sitka's renewed motion for summary and alternative motion for partial summary judgment[41] is denied.

DATED at Anchorage, Alaska this 17th day of July, 2025.

/s/ H. Russel Holland
United States District Judge

---

[40](...continued)
Docket 11-7.

[41]Docket No. 49.